IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 20-cv-01597-NYW-MEH

GERRY TRACY,

    Plaintiff,

v.

SUNCOR ENERGY (U.S.A.) INC.,

    Defendant.

---

## MEMORANDUM OPINION AND ORDER

    This matter comes before the Court on Defendant Suncor Energy (U.S.A.) Inc.'s Motion for Summary Judgment (the "Motion" or "Motion for Summary Judgment") filed on September 24, 2021. [Doc. 42].[1] Upon review of the Motion and the associated briefing, the applicable case law, and the record before the Court, the Court concludes that oral argument will not materially assist in the resolution of this matter. For the reasons set forth below, the Motion for Summary Judgment is respectfully **DENIED**.

## BACKGROUND

    The below material facts are drawn from the Motion for Summary Judgment [Doc. 42], Plaintiff Gerry Tracy's Response in Opposition to Defendant Suncor Energy (U.S.A.) Inc.'s Motion for Summary Judgment (the "Response") [Doc. 47], and Defendant Suncor Energy (U.S.A.) Inc's Reply in Support of its Motion for Summary Judgment (the "Reply") [Doc. 65] and are undisputed unless otherwise noted. Plaintiff Gerry Tracy ("Mr. Tracy" or "Plaintiff")

---

[1] This case was reassigned to this District Judge on August 5, 2022. *See* [Doc. 73].

previously worked for Suncor Energy U.S.A. Inc. ("Defendant" or "Suncor") as the team lead for construction at Suncor's Commerce City Refinery ("CCR") before his termination in 2018. [Doc. 42 at ¶ 1]. At the time of his termination, Mr. Tracy was over 40 years old. [*Id.* at ¶ 4].[2]

At the CCR, tools and equipment that are no longer usable become "scrap." [*Id.* at ¶ 7]. In April 2018, Suncor was contacted by a third-party recycling company and informed that a Suncor employee, Rodrigo Chavez, was involved in "excessive" scrap-metal recycling. [*Id.* at ¶ 13]. Then, on September 5, 2018, Suncor's maintenance director, Shane Ping, informed Perry Herrick, the manager of turnaround and construction, that "contractors had been recycling scrap metal without authorization." [*Id.* at ¶¶ 3, 22]. Suncor launched an investigation into the scrap metal recycling scheme and retained an outside investigator, John Lipka, to lead the investigation. [*Id.* at ¶¶ 23, 25, 29].

Mr. Lipka collected his investigative findings into "EthicsPoint Reports to Investigation Committee," or "R2s." [*Id.* at ¶ 42]. The R2s "did not recommend any disciplinary action, but instead made factual findings." [*Id.* at ¶ 81]. Mr. Tracy's R2 states that, by Mr. Tracy's own admission, "he approved 2012 wire scrapping when requested by Mr. Chavez and 2013 motor scrapping when requested by Ross Arellano," another Suncor employee. [*Id.* at ¶ 46]. The R2 further states that Mr. Tracy had ongoing knowledge and awareness of the scrap metal recycling activity but did not attempt to stop the activity or inform management of the activity, [*id.*], but Mr. Tracy disputes the accuracy of this finding. [Doc. 47 at ¶ 46]. Mr. Tracy was found to have violated Suncor's Accounting, Reporting, and Business Control Policy Guidance & Standard ("PG&S") and its Cash Handling PG&S. [Doc. 42 at ¶ 86]. Relevant here, another individual,

---

[2] Neither Party provides Mr. Tracy's exact age in their summary judgment briefing. *See* [Doc. 42; Doc. 47]. In Plaintiff's Complaint, he alleges that he was 58 years old at the time of his termination. [Doc. 1 at ¶ 13].

2

Sam Cooper, worked at Suncor as a manager of maintenance from approximately September 2016 through May 2018. [*Id.* at ¶ 107]. At the time of Mr. Lipka's investigation, Mr. Cooper was employed by a Canadian affiliate of Suncor and reported to that company's vice president, Myriam Levasseur. [*Id.* at ¶ 108]. Like Mr. Tracy, Mr. Cooper was found to have violated the Accounting, Reporting, and Business Control PG&S and the Cash Handling PG&S. [Doc. 43-10 at 4].

Following Mr. Lipka's investigation, the CCR vice president, Donald Austin, determined appropriate discipline for each employee. [Doc. 42 at ¶ 79]. Mr. Tracy was terminated from his employment with Suncor, [*id.* at ¶ 123], while Mr. Cooper was "repatriated" to the CCR, placed on a performance improvement plan ("PIP"), and lost his bonus for the year. [*Id.* at ¶ 110].[3] Mr. Austin states that in determining discipline for each individual, he considered "the individual's personal culpability, the impact the individual's behavior had on Suncor's operations, the individual's level within the company, how cooperative, forthright, and honest the individual was in the investigation, and any mitigating factors." [*Id.* at ¶ 84]. Mr. Tracy disputes that these factors were used by Mr. Austin in determining his discipline. [Doc. 47 at ¶ 84].

Mr. Tracy initiated this civil action against Suncor on June 3, 2020, alleging that he was unlawfully terminated on the basis of his age. *See* [Doc. 1]. Mr. Tracy asserts one claim of age discrimination under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq*. [*Id.* at 12]. On September 24, 2021, Suncor filed the instant Motion for Summary Judgment. [Doc. 42]. Suncor argues generally that Mr. Tracy was not terminated on the basis of his age, but due to Suncor's determination that Mr. Tracy "oversaw a program . . . in which Suncor employees improperly recycled hundreds of thousands of dollars' worth of Suncor's scrap metal for cash

---

[3] The Parties dispute whether Mr. Cooper's reassignment constitutes a demotion, *see* [Doc. 42 at ¶ 110; Doc. 47 at ¶ 110], but do not dispute that Mr. Cooper was "demoted two pay bands." [Doc. 42 at ¶ 116; Doc. 47 at ¶ 116].

3

without properly returning all of the cash to Suncor or otherwise accounting for it." [*Id.* at 1 (emphasis omitted)]. Mr. Tracy responded in opposition to the Motion on October 15, 2021, [Doc. 47], and Suncor then replied. [Doc. 65].[4] Because the Motion is ripe for disposition, I consider the Parties' arguments below.

## LEGAL STANDARD

Pursuant to Rule 56, summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[I]t is not the party opposing summary judgment that has the burden of justifying its claim; the movant must establish the lack of merit." *Alpine Bank v. Hubbell*, 555 F.3d 1097, 1110 (10th Cir. 2009). "A dispute is genuine if there is sufficient evidence so that a rational trier of fact could resolve the issue either way. A fact is material if under the substantive law it is essential to the proper disposition of the claim." *Crowe v. ADT Sec. Servs., Inc.*, 649 F.3d 1189, 1194 (10th Cir. 2011) (internal citations and quotation marks omitted). It is the movant's burden to demonstrate that no genuine dispute of material fact exists for trial, whereas the nonmovant must set forth specific facts establishing a genuine issue for trial. *See Nahno-Lopez v. Houser*, 625 F.3d 1279, 1283 (10th Cir. 2010).

To satisfy its burden at summary judgment, the nonmovant must point to competent summary judgment evidence creating a genuine dispute of material fact; conclusory statements based on speculation, conjecture, or subjective belief are insufficient. *See Bones v. Honeywell*

---

[4] Suncor's Reply violates the Local Rules of Practice in numerous respects, *see* D.C.COLO.LCivR 10.1(c), (d), (e), in what appears to be an attempt to circumvent the page limitations set forth by the former presiding judge's Practice Standards. *See* [Doc. 65]. This Court has discretion to strike filings that fail to comply with the Local Rules. *Jamieson v. Hoven Vision LLC*, No. 20-cv-01122-WJM-KLM, 2020 WL 7043865, at *2 (D. Colo. Dec. 1, 2020). However, in the interest of judicial efficiency, the Court will not strike the Reply.

4

*Int'l, Inc.,* 366 F.3d 869, 875 (10th Cir. 2004); *see also* 10B Charles Alan Wright et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998) (explaining that the nonmovant cannot rely on "mere reargument of his case or a denial of an opponent's allegation" to defeat summary judgment). In considering the nonmovant's evidence, the Court cannot and does not weigh the evidence or determine the credibility of witnesses. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1165 (10th Cir. 2008). At all times, the Court will "view the factual record and draw all reasonable inferences therefrom most favorably to the nonmovant." *Zia Shadows, L.L.C. v. City of Las Cruces*, 829 F.3d 1232, 1236 (10th Cir. 2016).

## ANALYSIS

The ADEA makes it unlawful for an employer to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "[T]he ordinary meaning of the ADEA's requirement that an employer took adverse action 'because of' age is that age was the 'reason' that the employer decided to act." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176 (2009). A plaintiff can demonstrate discrimination "either by direct evidence of discrimination or by indirect evidence." *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 969 (10th Cir. 2017). "Proof of discrimination by indirect evidence follows the three-part burden-shifting framework articulated in" *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See id.*

Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination. *Id.* "A plaintiff establishes a prima facie case of age discrimination by showing that he was (1) within the protected age group; (2) doing satisfactory work (qualified for the position); (3) discharged (or adversely affected by defendant's employment decision); and

5

(4) replaced by a younger person." *Jones v. Unisys Corp.*, 54 F.3d 624, 630 (10th Cir. 1995). "The critical prima facie inquiry in all cases is whether the plaintiff has demonstrated that the adverse employment action occurred under circumstances which give rise to an inference of unlawful discrimination." *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 (10th Cir. 2000).

If and when the plaintiff meets this burden, the burden shifts to the defendant to show a "legitimate, nondiscriminatory reason" for the employment decision. *EEOC v. Flasher Co., Inc.*, 986 F.2d 1312, 1316 (10th Cir. 1992); *McDonnell Douglas Corp.*, 411 U.S. at 802. The Tenth Circuit has described this burden as "exceedingly light," *see Williams v. FedEx Corp. Servs.*, 849 F.3d 889, 899-900 (10th Cir. 2017), as the employer's "stated reasons [for the employment decision] need only be legitimate and non-discriminatory 'on their face.'" *DePaula*, 859 F.3d at 970 (quoting *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1043 (10th Cir. 2011). The Court's assessment as to whether the defendant has met this burden does not involve any sort of credibility assessment. *Id.*

If defendant meets this burden, the burden shifts back to the plaintiff, who must "demonstrate that the employer's justification is pretextual," i.e., "not the true reason for the employment decision." *Id.* "At the summary judgment stage, if the plaintiff produces both a prima facie case and evidence supporting a finding that [the] defendant's alleged nondiscriminatory reasons for the employment decisions are pretextual, the case should go to the factfinder." *Jones*, 54 F.3d at 630 (quotation omitted).

I.   **Prima Facie Case of Discrimination**

First, Suncor argues that Mr. Tracy cannot establish a prima facie case of age discrimination. *See* [Doc. 42 at 28]. However, Suncor does not attack any of the traditional four

elements of a prima facie age-discrimination case; rather, it asserts that Mr. Tracy "cannot show that age played any role at all in the termination of his employment, let alone that it was the 'but for' cause of the termination of his employment." [*Id.* at 28-29 (emphasis omitted)]. In so doing, Suncor relies on *Hubbard v. Oral & Maxillofacial Associates, LLC*, 784 F. App'x 635 (10th Cir. 2019), wherein the Tenth Circuit held that "[t]o survive summary judgment on an ADEA claim, a plaintiff must point to evidence 'that age was the 'but-for' cause of the employer's adverse action." [*Id.* at 28]; *see also Hubbard*, 784 F. App'x at 640. But *Hubbard* does not create a causation element for a prima facie discrimination claim; in fact, in *Hubbard*, the employer had conceded that the employee had established his prima facie case. *See Hubbard*, 784 F. App'x at 640. At the first stage of the *McDonnell Douglas* framework, the critical inquiry is not whether Plaintiff has established causation, but whether he has "demonstrated that the adverse employment action occurred under circumstances which give rise to an *inference* of unlawful discrimination." *Kendrick*, 220 F.3d at 1227 (emphasis added).[5] "[T]he appropriate formulation of the prima facie case is flexible, looking to those logically salient circumstances of each case that may raise the requisite inference of discrimination." *Medlock v. United Parcel Serv., Inc.*, 608 F.3d 1185, 1191

---

[5] In its Reply, Suncor cites *Maxey v. Rest. Concepts II, LLC*, 654 F. Supp. 2d 1284, 1292 (D. Colo. 2009) in support of its argument that Mr. Tracy has failed to establish a prima facie case of age discrimination because he has not established that his age was the but-for cause of his termination. *See* [Doc. 65 at 11]. But in *Maxey*, the court did not hold that but-for causation is an element of a prima facie discrimination case; rather, it stated that "[t]o *prevail*" on a claim under the ADEA, a plaintiff "must prove by a preponderance of the evidence that his age was the 'but-for' cause of [the employer's] actions." *Maxey*, 654 F. Supp. 2d at 1291 (emphasis added). Here, "in order to survive summary judgment, [Mr. Tracy] need not prove []he will ultimately prevail" on his claim; rather, he must only " establish the existence of evidence from which a jury could reasonably return a verdict in [his] favor." *Colbert v. Bd. of Cnty. Comm'rs for Oklahoma Cnty.*, 414 F. App'x 156, 160 (10th Cir. 2011). It is not this Court's role to weigh evidence or make factual findings on summary judgment; rather, the Court's inquiry is limited to whether Plaintiff has established a genuine dispute of fact that precludes judgment at this time and warrants a trial by a factfinder. *Bones*, 366 F.3d at 875. Because Suncor does not directly challenge any of the specific prima facie elements of an ADEA discrimination case, the Court does not address this argument further.

7

n.5 (10th Cir. 2010). Because Suncor does not expressly challenge any elements of Mr. Tracy's prima facie case, the Court construes this as a concession that he has established a prima facie case. *See Barcikowski v. Sun Microsystems, Inc.*, 420 F. Supp. 2d 1163, 1174 (D. Colo. 2006) ("[B]ecause Defendant does not argue to the contrary . . ., I assume, *arguendo*, that Plaintiff can establish a prima facie case for age discrimination."); *Schaffer v. Clinton*, 240 F.3d 878, 880 (10th Cir. 2001) ("Because the argument was not raised, it is not before this Court.").

## II. Legitimate, Non-Discriminatory Reason for the Adverse Employment Action

Having not specifically challenged Plaintiff's ability to establish a prima facie case of age discrimination, Suncor must demonstrate that it had legitimate, non-discriminatory reasons for terminating Mr. Tracy—namely, that it determined through its investigation that "Mr. Tracy had approved, on multiple occasions, an illegal recycling program, referred to by employees as the 'Gerry Tracy Program,' through which Suncor lost significant sums of money for many years (since at least 2012)." [Doc. 42 at 32]. Plaintiff does not argue that Defendant has not demonstrated a non-discriminatory reason for his termination. *See generally* [Doc. 47].

"[T]he defendant does not at this stage of the proceedings need to litigate the merits of the reasoning, nor does it need to prove that the reasoning relied upon was bona fide." *Considine v. Newspaper Agency Corp.*, 43 F.3d 1349, 1363 (10th Cir. 1994) (quotation omitted). "[T]his stage of the analysis only requires the defendant to articulate a reason for the discipline that is not, on its face, prohibited and that is reasonably specific and clear." *Frappied v. Affinity Gaming Black Hawk, LLC*, 966 F.3d 1038, 1058 (10th Cir. 2020) (quotation omitted). A defendant meets this burden by "set[ting] forth specific and detailed legitimate, nondiscriminatory reasons for its termination" decision and by citing evidence "reflecting the reasons why [the employee] was terminated." *Id.* Here, Defendant has submitted an investigation report detailing Suncor's

8

investigation into Mr. Tracy's alleged wrongful conduct, *see* [Doc. 43-4], a declaration from Mr. Lipka setting forth the parameters and findings of the investigation, *see* [Doc. 43-1], and a declaration from Mr. Austin wherein he states that he determined that terminating Mr. Tracy was appropriate based on the results of the investigation. [Doc. 43-15 at ¶ 24]. This is sufficient to meet Defendant's "exceedingly light" burden at this stage. *Frappied*, 966 F.3d at 1058; *Brown v. Parker-Hannifin Corp.*, 746 F.2d 1407, 1411 (10th Cir. 1984) ("[I]nsubordination could serve as a legitimate non-discriminatory reason for discharge to rebut the plaintiff's prima facie case.").

**III. Pretext**

Because Suncor met its burden to provide a legitimate, non-discriminatory reason for Mr. Tracy's termination, the burden shifts back to Mr. Tracy to show that Suncor's proffered reason for his termination was pretextual. *DePaula*, 859 F.3d at 970. "A plaintiff can show pretext by revealing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action such that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reason." *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1217 (10th Cir. 2002) (quotation omitted). "[E]vidence of pretext may include, but is not limited to, the following: prior treatment of plaintiff; the employer's policy and practice regarding minority employment (including statistical data); disturbing procedural irregularities (e.g., falsifying or manipulating criteria); and the use of subjective criteria." *Id.* (quotation and ellipses omitted). A plaintiff need not pursue "any particular means of demonstrating that a defendant's stated reasons are pretextual." *Frappied*, 966 F.3d at 1059. However, in reviewing the Parties' pretext arguments, the Court "must not sit as a superpersonnel department that second-guesses the

9

company's business decisions, with the benefit of twenty-twenty hindsight." *Tyler v. RE/MAX Mountain States, Inc.*, 232 F.3d 808, 813-14 (10th Cir. 2000).

Mr. Tracy argues that Suncor's proffered reason for his termination was pretextual because (1) "the scrap metal investigation was biased and the decision-maker who ultimately imposed punishment was motivated by bias," [Doc. 47 at 32]; (2) "scrap metal recycling was widespread, well-known, and approved by Suncor management, so that any participation was not even misconduct," [*id.* at 33]; and (3) "several similarly situated employees found guilty of similar and even far more egregious violations of Suncor policy were treated better than Mr. Tracy." [*Id.* at 34]. As explained below, the Court concludes that Mr. Tracy has demonstrated the existence of a genuine issue of material fact as to whether Suncor's rationale for the termination decision was pretextual.

"A plaintiff seeking to show pretext 'often does so by providing evidence that he was treated differently from other similarly-situated employees who violated work rules of comparable seriousness.'" *Timmerman v. U.S. Bank, N.A.*, 483 F.3d 1106, 1120 (10th Cir. 2007) (quoting Kendrick, 220 F.3d at 1230). "To be 'similarly situated' to the plaintiff, the other employee must 'share the same supervisor' or decision maker." *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 540 (10th Cir. 2014) (quoting *E.E.O.C. v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 489 (10th Cir. 2006)). "This is because different treatment by itself does not always indicate pretext," and "[d]ifferences in disciplinary decisions 'may be explained by the fact that the discipline was administered by different supervisors, or that the events occurred at different times when the company's attitudes toward certain infractions were different.'" *Id.* (quoting *E.E.O.C. v. Flasher Co.*, 986 F.2d 1312, 1320 (10th Cir. 1992)).

10

Mr. Tracy argues that the following employees were similarly situated to him but received less severe discipline for the same or similar actions as those taken by Mr. Tracy: Sam Cooper, Jim Henderson, B.J. Verkler, Troy Hernandez, and Perry Herrick. [Doc. 47 at 36-38]. The Court concludes that Mr. Tracy has established a genuine dispute of fact as to whether Suncor disciplined Mr. Cooper less severely than Mr. Tracy for similar conduct and limits its analysis accordingly.

Mr. Cooper was a manager of maintenance from approximately September 2016 through May 2018 and was 36 years old at the time of Mr. Tracy's termination. [Doc. 43-15 at ¶ 21; Doc. 48-7 at 37]. Mr. Tracy has submitted or directed the Court to evidence that Mr. Cooper knew that his subordinate, Mr. Henderson, had managed approximately $500,000 in scrap metal sales, [Doc. 43-5 at 5], and that Mr. Cooper was "well aware" of the scrap metal recycling scheme but did not bring it to his supervisor's attention. [Doc. 43-8 at 2; Doc. 43-14 at 3]. In addition, Mr. Cooper approved of the recycling practice when asked about the practice by Mr. Hernandez, [Doc. 43-15 at 2], and congratulated Mr. Hernandez when informed that Mr. Hernandez had earned $480 in recycling steam traps. [Doc. 43-10 at 2]. Mr. Cooper also used money obtained from the recycling scheme for non-work purposes. [Doc. 43-13 at 3; Doc. 43-10 at 2-3]. Finally, Mr. Tracy directs the Court to evidence that Mr. Cooper falsely claimed that he did not have knowledge of the scrap metal recycling scheme. [Doc. 43-10 at 2]. Mr. Cooper was placed on a performance improvement plan ("PIP") and lost his bonus for the year. [Doc. 43-15 at ¶ 21]. Mr. Cooper was also reassigned to the CCR and was given Mr. Tracy's position, [*id.*], which resulted in a pay cut. [Doc. 43-19 at 116:7-12].

Suncor argues that Mr. Cooper is not similarly situated to Mr. Tracy because he reported to Myriam Levasseur and "[b]ecause Ms. Levasseur rendered the disciplinary decision for Mr. Cooper, one cannot infer from Mr. Austin's separate disciplinary decision as to Plaintiff that any

11

sort of improper motive exists." [Doc. 42 at 36]. However, similarly situated employees must share the same supervisor "*or decision maker*," *Smothers*, 740 F.3d at 540 (emphasis added), and a genuine dispute of fact exists as to whether Mr. Austin was a decision maker in the discipline of Mr. Cooper. While Suncor asserts that Mr. Austin "did not have final decision-making authority with respect to Mr. Cooper," [Doc. 42 at ¶ 109 (citing Doc. 43-15 at ¶ 21)], Mr. Tracy has submitted evidence that Mr. Austin played a meaningful, decision-making role in Mr. Cooper's discipline. *See* [Doc. 43-15 at ¶ 21 ("**I did have significant input** into the discipline imposed on Mr. Cooper because it involved demoting him and repatriating him back to the [CCR], for which I am responsible.") (emphasis added); *id.* (Mr. Austin explaining "[t]he reason [he] supported allowing Mr. Cooper to come back to the [CCR]"); Doc. 48-1 at 53:3-10 ("[W]e did discuss what would happen to Mr. Cooper . . . I was involved in that discussion, and I was privy to that decision."); *id.* at 53:11-16 ("I agreed with the decision that **we** took, which was to demote him and to return him to the U.S. . . . This was a very serious decision that **we** took regarding Mr. Cooper.") (emphases added)]. Drawing all reasonable inferences in Plaintiff's favor, as the Court must, the Court concludes that a reasonable jury could find that Mr. Austin was a decision maker in imposing discipline on both Mr. Cooper and Mr. Tracy, and thus, that their discipline was imposed by the same decision maker. *Smothers*, 740 F.3d at 540.

In the alternative, Suncor asserts that Mr. Tracy and Mr. Cooper are not similarly situated because the amount of money involved in Mr. Cooper's participation in the recycling scheme was "less than $1000.00, . . . as compared to the hundreds of thousands of dollars involved in Plaintiff's approval and failure to report the process," and "unlike Plaintiff, Mr. Cooper was also not contradicted by numerous other witnesses, and did not contradict himself." [Doc. 42 at 37]. Again, the Court finds a genuine dispute of material fact here, as Mr. Tracy has directed the Court to

evidence that Mr. Cooper was aware of $500,000 in scrap metal sales by his subordinate, knew of the metal recycling scheme but did not inform his supervisor, and falsely denied knowledge of the scheme during the course of the investigation. [Doc. 43-5 at 5; Doc. 43-8 at 2; Doc. 43-14 at 3; Doc. 43-10 at 2]. Moreover, Mr. Tracy and Mr. Cooper were found to have run afoul of the same workplace standards of conduct—the Accounting, Reporting, and Business Control PG&S and the Cash Handling PG&S. [Doc. 43-4 at 6; Doc. 43-10 at 4].[6] That the employees' misconduct was not identical does not preclude a finding that the employees were similarly situated. *See Kendrick*, 220 F.3d at 1230 (employees must have violated rules of "comparable seriousness"); *Jones v. Hyatt Corp.*, No. CV 12-01301 MV/RHS, 2014 WL 12782783, at *32 (D.N.M. Dec. 12, 2014) ("Plaintiff presents evidence that an employee violated the same cash handling policy that Plaintiff violated. Plaintiff need not further demonstrate that that violation occurred in the 'same way.'").

Whether two employees are similarly situated "ordinarily presents a question of fact for the jury" and thus cannot be determined by the Court at the summary judgment stage. *Riggs v. AirTran Airways, Inc.*, 497 F.3d 1108, 1117 (10th Cir. 2007). Rather, the Court's role at this juncture is limited to determining whether Mr. Tracy "has adduced enough evidence to support a finding that the other employee and plaintiff were sufficiently similarly situated to support an inference of discrimination." *Id.* (quotation and alteration marks omitted). Because a reasonable jury could conclude that Mr. Cooper, a 36-year-old, and Mr. Tracy, a 58-year-old, "violated workplace rules of similar seriousness," *Kendrick*, 220 F.3d at 1230, and were thus similarly situated, but disciplined differently, the Court concludes that a reasonable jury could conclude that

---

[6] In fact, Mr. Tracy's R2 states that he "appears to have failed to ensure that his subordinates complied with the Cash Handling PG&S," [Doc. 43-4 at 6], while Mr. Cooper was found to have himself "failed to comply with the Cash Handling PG&S." [Doc. 43-10 at 4].

13

Mr. Tracy's age "was the 'reason' that the employer decided to act." *Gross*, 557 U.S. at 176. Thus, "the case should go to the factfinder." *Jones*, 54 F.3d at 630.

Finally, insofar as Suncor asserts that the Court cannot act as a "super personnel department" that second guesses employers' business judgments, [Doc. 42 at 34], the Court does not do so here. While Suncor has presented evidence explaining its termination decision, Mr. Tracy has presented evidence demonstrating "inconsistencies [or] contradictions in [Suncor's] proffered legitimate reasons for its action such that a reasonable factfinder could rationally find them unworthy of credence and hence infer that [Suncor] did not act for the asserted non-discriminatory reason." *Garrett*, 305 F.3d at 1217. Accordingly, the Motion for Summary Judgment is **DENIED**.

## CONCLUSION

For the reasons stated herein, **IT IS ORDERED** that:

(1) Defendant Suncor Energy (U.S.A.) Inc.'s Motion for Summary Judgment [Doc. 42] is **DENIED**; and

(2) On or before **September 8, 2022**, the Parties shall meet and confer concerning their respective availabilities for a five-day jury trial in each of January, March, April, June, and July 2023 and shall file a joint status report informing the Court of the weeks in which all counsel and Parties are available for trial.

DATED: August 30, 2022

BY THE COURT:

_____
Nina Y. Wang
United States District Judge

14